**E-FILED on** 1/22/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROSALINDA PONCE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　Defendant. | No. C-06-03543 RMW<br><br>ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND<br><br>**[Re Docket Nos. 19, 20]** |

## I. INTRODUCTION

On July 23, 2003, Plaintiff Rosalinda Ponce applied for Supplemental Security Income disability benefits under Title XVI of the Social Security Act. The Commissioner denied her application initially and on reconsideration, following which an ALJ held a hearing. The ALJ found that plaintiff was not disabled within the meaning of the Act and denied benefits. The Social Security Administration's Appeals Council denied plaintiff's request for review, and plaintiff commenced this action pursuant to 42 U.S.C. § 405(g) on June 2, 2006.

Plaintiff has moved this Court in the alternative: 1) for summary judgment in favor of Plaintiff awarding disability benefits; or 2) for an order to remand the case for additional

1 administrative proceedings on whether plaintiff was disabled. The Commissioner has moved for
2 summary judgment affirming the ALJ's decision.

3 Plaintiff asserts that the ALJ erred in: 1) her rejection of the opinion of a treating psychiatrist;
4 2) her treatment of the opinion of a consulting psychiatrist; 3) her findings regarding plaintiff's
5 medical impairments; 4) in discounting plaintiff's symptom reporting; and 5) in reaching her
6 findings regarding plaintiff's residual functional capacity and substance abuse. Having reviewed the
7 papers submitted by the parties and the administrative record, the court denies plaintiff's motion for
8 summary judgment and grants summary judgment in favor of the Commissioner affirming the ALJ's
9 decision.

## II. STATEMENT OF FACTS

Rosalinda Ponce is a thirty-nine year old woman who had little prior work experience at the time of the ALJ decision. TR 16. None of her prior work experience was sufficient to qualify as substantial gainful activity. *Id.* By October 2003, Ponce had given birth to four children, but did not have custody over any of them. TR 130.

Ponce received treatment from Santa Clara Valley Medical Center from March 20, 2001 until May 15, 2002 for alleged impairments of depression and a bad back. TR 111. Treatment notes during this period show that Ponce had a history of using PCP. TR 112-21. By the end of this treatment in May 2002, Ponce reported that she was doing well while she was on Prozac. TR 112.

From September 2003 until March 2005, Ponce received treatment at East Valley Mental Health Clinic from Dr. Giselda Tan, a psychiatrist. TR 157-74. In September 2003, Ponce reported that she was depressed over losing custody of her children, heard voices and had taken Prozac in the past for symptom relief. TR 170-71. Ponce reported low self esteem, but did not feel suicidal. TR 173. Ponce reported that Prozac had helped her symptoms. TR 171.

On examination, Dr. Tan described Ponce as depressed, but cooperative with soft but coherent and relevant speech. TR 172. Dr. Tan diagnosed a schizo-affective disorder, bipolar type, and prescribed medication. TR 173. In October 2003, Ponce "reported doing well and taking her meds as prescribed," (TR 165), and "feeling good with meds" in that she "no longer hears voices in

her head," and was sleeping and eating normally. TR 163. Dr. Tan described Ponce as calm, affect appropriate and coherent, and continued her medication. TR 163.

In April 2004, Ponce reported that she felt depressed on and off, and had stopped taking her medication because she was pregnant. TR 161-62. Ponce also reported that she slept and ate "good," walked for exercise, and spent time with friends and family. TR 161. Dr. Tan described Ponce as "mildly depressed," but also as pleasant, alert and cooperative, with good concentration. *Id.* In September 2004, Ponce reported that she was "doing well." TR 162.

In November 2004 Ponce denied hearing voices anymore, and reported that she has "no depression when she takes Prozac." TR 166. Ponce reported that she had not ingested any PCP for almost one year. *Id.* Dr. Tan described Plaintiff's affect and mood as "mildly depressed," and noted that Ponce was cooperative to questioning and that her speech was coherent and relevant on examination. *Id.* Dr. Tan found no evidence of psychosis. TR 167.

Dr. Tan completed a questionnaire in April 2005, in which she stated that Ponce had a schizoaffective disorder, bipolar type, characterized by a pervasive loss of interest, sleep disturbance, decreased energy, difficulty concentrating, and hallucinations. TR 175-76. Dr. Tan also noted that Ponce has difficulty maintaining social functioning and frequent deficiencies in concentration, persistence, or pace, and had mental limitations in twenty mental work-related categories. TR 176, 179-80. Dr. Tan reported that Ponce felt better with treatment and had a guarded prognosis without medication. TR 177. Dr. Tan concluded that Ponce could not work on a sustained basis due to depressive symptoms. TR 178.

Ponce underwent a consultative psychiatric evaluation by Dr. Maria Antoinette Acenas, a board certified psychiatrist, on October 29, 2003, and complained of social withdrawal, feelings of sadness, and worrying all the time, which she self-medicated with PCP. TR 129. Dr. Acenas described Ponce as depressed, but friendly and cooperative. TR 130-31. Dr. Acenas reported that Ponce had no delusions or hallucinations. TR 131. Dr. Acenas concluded that Ponce was able to perform simple and repetitive tasks and accept supervision, but that she may have problems performing activities on a consistent basis and maintaining a work schedule, and that she would have problems dealing with stress encountered in competitive work. TR 132.

On November 25, 2003, Dr. Danilo Lucila, a non-examining agency physician, reviewed the record and concluded that Ponce had either no or mild limitations in daily activities, social functioning and concentration, persistence or pace and had no episodes of decompensation (TR 137-50), was not significantly limited in 18 of 20 mental work-related activities, and was moderately limited in the remaining categories. TR 133-35. Dr. Lucila noted that data does not support Dr. Acenas' opinion that Ponce cannot maintain pace or regular attendance. TR 152. Dr. Lucila further concluded that Ponce should be able to perform simple work, especially if she stops abusing drugs. *Id.* Dr. P. Peskin, another non-examining agency physician, affirmed Dr. Lucila's findings on April 9, 2004. TR 155.

In a letter dated January 5, 2005, therapist Christine Chatwell responded to Ponce's attorney's request for information related to Ponce's progress. TR 156-57. Ms. Chatwell indicated that Ponce started counseling in July 2004 for chemical dependency, but was withdrawn and did not respond to treatment because she was upset over losing custody of her daughter. TR 156. Ms. Chatwell stated that Ponce had abstained from drugs and alcohol and within the last 3 months had fully engaged in treatment and was making changes in her life. *Id.*

Lay witness Carlos Marquez, Ponce's boyfriend, completed a third party Function Report in which he stated that Ponce has difficulty holding a job, going out and socializing with other people, sleeps too much, and needs encouragement to do many basic tasks. TR 91-99. He stated that plaintiff has lost a lot of interest in normal daily activities and does not like to be around others. TR 95. Marquez further stated that plaintiff can lift 10 pounds, cannot stand or squat for a long time, has a bad memory, experiences "carpal tunnel in hands," has difficulty concentrating and has trouble understanding. TR 96. He further estimated that plaintiff could walk about ½ mile before needing to rest, and required approximately 10 minutes of rest before resuming. TR 96. Marquez also stated that plaintiff could pay attention for approximately ten minutes. TR 96.

At her April 2005 hearing, Ponce testified that she started using PCP when she was 18 years old, and had sought treatment for depression and hearing voices. TR 204-05. Ponce also testified that she had trouble getting out of bed, was unmotivated, and had memory problems. TR 209, 211.

The ALJ issued her decision on July 25, 2005. At step one of the five-step sequential evaluation process, the ALJ found that Ponce had no prior substantial gainful activity. TR 16. At step two, the ALJ found that Ponce suffers from a schizoaffective disorder (bipolar type), has a history of alcohol and drug abuse, and that Ponce has a "severe" impairment as contemplated by the Act. *Id.* At step three of the analysis, the ALJ found that Ponce's symptoms do not meet or equal the criteria of any listed impairment. *Id.* at 17. With regard to Ponce's residual functional capacity, the ALJ determined that Ponce could perform a wide range of unskilled work (involving simple repetitive tasks) at all exertional levels. At step four, the ALJ determined that Ponce had no past relevant work and thus proceeded to step five where she determined that Ponce had the residual functional capacity to perform other work in jobs that exist in significant numbers in the general economy and thus that Ponce was not disabled. *Id.* at 20-21.

### III. LEGAL STANDARDS

The Commissioner's decision (ALJ's decision) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. 42 U.S.C. §405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence is more than a mere scintilla but less than a preponderance. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Still, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where evidence exists to support more than one rational interpretation, the court must defer to the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Sandgathe v. Chater*, 108 F. 3d 978, 980 (9th Cir.1997). Further, an ALJ's finding will not be reversed for errors that are harmless or inconsequential to the ultimate nondisability determination. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To receive Supplemental Security Income disability benefits, an individual under fifty-five years old must establish the existence of a medically determinable impairment that could be expected to result in death or that has lasted, or could be expected to last, for a continuous period of

not less than twelve months, and that rendered her unable to engage in any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1); 20 C.F.R. § 416.905.

## IV. DISCUSSION

### A. Treatment of Opinion of Treating Psychiatrist Dr. Tan.

Plaintiff's first argument is that the ALJ erred in her treatment of treating psychiatrist Dr. Tan's opinion expressed in an April 7, 2005 questionnaire. Mem. at 3. Specifically, plaintiff argues that the ALJ improperly disregarded several aspects of Dr. Tan's opinions: the identification of anhedonia[1] as a symptom, that plaintiff had marked or extreme difficulties in maintaining social functioning and marked limitations in accepting instruction and responding to supervisors and in responding appropriately to changes in the work setting, and her opinion that plaintiff was not capable of working on a sustained basis. TR 175-180. Plaintiff argues that the ALJ erred by giving insufficient reasons for disregarding these opinions.

The Commissioner contends that the ALJ did not err and that she provided clear and convincing reasons for discounting Dr. Tan's opinion. Opp. at 6.

When evaluating medical opinions, an ALJ takes into consideration the consistency of that opinion with the record as a whole. 20 C.F.R. §416.927(d)(4). An ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1194-95 (9th Cir. 2004). If a treating physician's opinion is uncontradicted, then the Commissioner must have clear and convincing reasons for rejecting that opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the treating doctor's opinion is contradicted, that opinion can be rejected for specific and legitimate reasons supported by substantial evidence. *Id.* The ALJ need not accept a treating physician's brief and conclusory opinion if it is unsupported by clinical findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir 1989). A discrepancy between a doctor's treatment notes and a doctor's later stated opinion is a clear and convincing reason for rejecting that opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Finally, a treating

---

[1] Anhedonia is the lack of the capacity to experience pleasure.

physician's opinion is generally afforded great weight, but is not binding with respect to the ultimate determination of disability. *Batson*, 359 F.3d at 1194-95.

Here, the ALJ disregarded Dr. Tan's ultimate opinion that plaintiff is unable to work on a sustained basis and stated several reasons for her decision. Specifically, the ALJ noted that portions of Dr. Tan's opinion regarding anhedonia and hallucinations were not supported by her treatment notes. TR 19. The treatment notes reflected that although plaintiff had some periods of social withdrawal, she was also socializing with her boyfriend and his family, that plaintiff was no longer hearing voices in her head and was sleeping normally. TR 19. These observations are supported by the record. Specifically, the medical record contains Dr. Tan's observations after October 2003 that plaintiff did not hear voices, did not have any thought disorder or psychosis on repeat mental status examination, was having good sleep, had good attention and concentration, and had coherent and relevant speech. TR 161, 163, 166-67, 172, 176. Plaintiff's interactions with her family and her boyfriend's family are also reflected in the record. TR 161, 166, 172. Based on these inconsistencies, the ALJ found Dr. Tan's 2005 opinion to be "not wholly reliable" and "not an accurate gauge" of plaintiff's mental status. TR 19.

Plaintiff argues that the treatment notes were not meant to be comprehensive and asserts that the ALJ's determination was "based on an illogical and unwarranted assumption that all symptoms are the same all the time." Mem. at 3-4. Plaintiff's argument is not persuasive. A discrepancy between a doctor's treatment notes and the doctor's later stated opinion is a clear and convincing reason for rejecting that opinion. *Bayliss*, 427 F.3d at 1216. The ALJ did not err in her treatment of Dr. Tan's opinion.

**B. Treatment of Opinion of Examining Psychiatrist Dr. Acenas.**

Plaintiff's second argument is that the ALJ erred in her treatment of Dr. Acenas' opinion by rejecting a portion of the opinion without stating any reason for doing so. Specifically, plaintiff focuses on Dr. Acenas' conclusion that plaintiff "<u>will</u> also have problems dealing with the usual stress encountered in competitive work" which the ALJ described as providing that plaintiff "<u>might</u> have problems ... dealing with the stresses of the workplace." Mem. at 4-5 (emphasis added by plaintiff). Plaintiff contends that "will" indicates a measure of certainty whereas "might" indicates

mere possibility, from which she concludes that the ALJ improperly rejected Dr. Acenas' opinion without providing any legitimate reason.

The Commissioner does not address the "will" vs. "might" issue argued by plaintiff, and instead argues that Dr. Acenas' opinion is consistent with the ALJ's residual functional capacity findings. Specifically, Dr. Acenas opined that plaintiff was able to perform simple and repetitive tasks and would have problems dealing with stress, but she did not elaborate further on the extent of these limitations. Thus, Dr. Acenas' opinion did not contradict the ALJ's residual functional capacity determination, and there was no reason for the ALJ to specifically accept or reject the opinion. Opp. at 7.

The court is not persuaded by plaintiff's argument. More specifically, the court is not persuaded that there is a material difference in Dr. Acenas' opinion and the description of the opinion in the ALJ's written decision, despite the slight difference in terminology. In relevant part, Dr. Acenas' opinion states:

> She is able to perform simple and repetitive tasks and accept instructions from supervisors. Due to her psychiatric problems, it is *possible that she will have* problems performing work activities on a consistent basis, as well as maintaining a regular attendance and finishing a normal work week. *Likewise, she will also have* problems dealing with the usual stress encountered in competitive work.

TR 132 (emphasis added). In comparison, the corresponding portion of ALJ's decision states:

> Dr. Acenas expressed her opinion that the claimant could perform simple and repetitive tasks and accept supervision; but she *might* have problems with persistence or pace, maintaining regular attendance, and dealing with stresses in the workplace.

TR 18 (emphasis added). The court is not persuaded that, taken in the context of the paragraph in which it appears, Dr. Acenas's choice of terminology constituted a statement to a degree of medical certainty that plaintiff will have problems dealing with the usual stresses in the workplace or that the ALJ disregarded such an opinion. The difference in terminology is not materially significant when the statements are viewed in context. Plaintiff has not established any error in this regard.

### C. The ALJ's Step Two Evaluation.

Plaintiff next contends that the ALJ erred in evaluating plaintiff's impairments at step two, but the arguments she asserts are difficult to understand, particularly the first three.

1         Plaintiff first asserts that the ALJ "revised" her findings when she asserted that plaintiff

2 suffers from a "schizoaffective disorder (bipolar type)" and then stated in the "Findings" section of

3 the decision that plaintiff suffers from a "depressive disorder (schizoaffective disorder)." Mem. at 5.

4 Plaintiff does not elaborate on the significance of this "revised" finding, but argues that "the ALJ's

5 unclear characterizations of mental impairments and limits possibly were based on negativity and

6 extra-record considerations about the in-house meaning and effects of the office-wide depression

7 (TR209-210)." Mem. at 5.

8         Plaintiff next argues that the ALJ "failed to distinguish between general symptomatology

9 issues and credibility issues" in her decision. *Id.* at 5-6. Again, however, plaintiff does not elaborate

10 on the alleged error, or explain how it merits reversal, and her argument is not clear.

11         Plaintiff next challenges the ALJ's finding that plaintiff's depressive disorder had not

12 imposed acute mental limitations for a continuous period of not less than twelve months, arguing

13 that the finding was not supported by substantial evidence. Mem. at 6. Plaintiff cites to portions of

14 the record as establishing the presence of her mental impairments for a period of greater than twelve

15 months. Plaintiff also argues that "the ALJ's findings on severity, duration, and RFC were improper

16 because they violated the principle that intermittent mental symptoms should be regarded as part of a

17 continuous disability (Section 12.00 of 20 C.F.R., Part 404, Subpart P, Appendix 1 indicates that

18 symptoms in schizophrenic and in affective-depressive disorders, the same diagnoses has here, are

19 'either intermittent or continuous' (12.03(A), 12.04(A))." Mem. at 6.

20         The Commissioner does not separately address these arguments, noting their confused

21 nature, and instead argues that the ALJ fully considered all of plaintiff's impairments and

22 accommodated plaintiff's limitations that were supported in the record in her residual functional

23 capacity finding, which limited plaintiff to simple and repetitive work. Opp. at 8.

24         To the extent the court understands plaintiff's arguments, the court is not persuaded that they

25 have merit. The court is not persuaded that the ALJ revised her findings regarding plaintiff's

26 impairment, nor that she confused symptoms with credibility, nor that her finding regarding the

27 duration of plaintiff's acute mental limitations was erroneous.

28

1   Plaintiff's fourth argument, however, warrants discussion. Plaintiff argues that the ALJ "also
2   omitted to use the 'special technique' with 'specific findings' about the four mandatory criteria from
3   20 C.F.R. § 416.920a, (e)(2) (1985-2000)" and that "[t]his omission in itself requires non-affirmation
4   of the ALJ's decision." Mem. at 6-7. In response, the Commissioner argues that plaintiff's
5   contention is without merit and that "[a]lthough the ALJ's discussion of the criteria is difficult to
6   locate, he did in fact discuss the criteria when he stated that 'the claimant does not exhibit moderate
7   or marked limitations in concentration, persistence, or pace, social interaction, or activities of daily
8   living' (TR 20)." Opp. at 9.

In cases involving colorable claims of mental impairments, the regulations require the ALJ to follow a special technique in evaluating the claims. Among other things, the ALJ must document application of the technique in her decision and must include a specific finding as to the degree or limitation in each of the functional areas described in the regulation, specifically, activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c), (d) and (e). For the first three functional areas, the degree of limitation is to be assessed on the following scale: none, mild, marked, or extreme. 20 C.F.R. § 416.920a(c)(4). Episodes of decompensation are to be assessed on a numerical scale: none, one or two, three, and four or more. *Id.* The regulations further provide that the ALJ's written decision

> must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas....

20 C.F.R. § 419.920a(e)(2). Failure to do so requires remand. *Selassie v. Barnhart*, 203 Fed. Appx. 174 (9th Cir. 2006); *Dykstra v. Barnhart*, 94 Fed. Appx. 449 (9th Cir. 2004).

In the present case, the ALJ's findings as to the degree or limitation of plaintiff in each of the functional areas described in the regulation are marginally sufficient. The ALJ stated:

> While *the claimant does not exhibit moderate or marked limitations in concentration and pace, social interaction, or activities of daily living,* the vocational expert was asked what effect moderate to marked limitations in those functional areas might have. He expressed his opinion that significant limitations in concentration, persistence of pace or in the capacity for social interaction would likely render the claimant incapable of sustained work activity. *Having weighed all of*

> *the evidence, however, the undersigned remains persuaded that the claimant has the residual functional capacity described [in the decision].*

TR 20 (emphasis added).

By finding that plaintiff did not exhibit moderate or marked limitations in concentration and pace, social interaction and the activities of daily living, the ALJ's implicit findings were that plaintiff's degree of limitation were no more than mild. The record does not contain evidence of specific episodes of decompensation.

### D. The ALJ's Determination of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in her determination of plaintiff's credibility. An ALJ is not required to accept a plaintiff's subjective symptom testimony, but if the ALJ finds the testimony to be not credible, she must make specific findings supporting this determination which are supported by the record. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony." *Id.* at 345-46 (internal quotation omitted).

In this case, the ALJ clearly did not accept plaintiff's testimony. Several reasons are apparent from her written decision. Plaintiff primarily focuses on the ALJ's comment concerning plaintiff's lack of motivation. The ALJ reasonably concluded that the plaintiff's description of the severity of her lack of motivation was not supported by the treatment records, which showed that plaintiff's motivation was susceptible to change depending on whether she took medication or abused drugs. Plaintiff reported improvement with medication to the extent that she had no depression when she took Prozac and consistently was doing well and feeling good. When plaintiff stopped taking Prozac, her symptoms returned. Plaintiff's own statements documented contemporaneously in the treatment records contradicted her subjective complaints of constant and disabling depressive symptoms, including lack of motivation.

The ALJ also discussed plaintiff's intermittent treatment history which showed that she did not show up for several scheduled appointments and there were gaps of several months in time between appointments she did attend. This, combined with the fact that plaintiff experienced

improvement in her depressive and other mental symptoms when she took her medication, suggests that plaintiff's allegations of more serious mental symptoms were not credible.

Plaintiff points out that the ALJ did not expressly address the Function Report filled out by Carlos Marquez, plaintiff's boyfriend. The ALJ also did not mention the letter from social worker Christine Chatwell which was written in response to the request of plaintiff's counsel. In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work and cannot disregard it without comment. *Bruce v. Astrue*, 557 F.3d 1113,1115 (9th Cir. 2009). The ALJ's failure to comment on the Function Report was error but harmless. The letter from Chatwell shed no light on whether plaintiff could work or was disabled, so there was nothing in it on which the ALJ needed to comment.

The relevant portions of the Function Report submitted by Marquez relate to plaintiff's difficulty in socializing with others, sleeping too much, needing encouragement from others and loss of interest in day-to-day activities. Although the ALJ failed to expressly discuss Marquez's Function Report, she did discuss these symptoms. Further, the existence of the symptoms as related by Marquez does not necessarily mean that plaintiff was disabled and is not inconsistent with the finding of the ALJ with respect to plaintiff's ability to work.

Chatwell's letter advised that plaintiff started chemical dependency treatment in late July 2004. The letter related that in the first three months plaintiff was in a withdrawn state and did not "connect" with others in the group. She was "ruminating" about the loss of her new born daughter and the improbability of reuniting with her in the future. Chatwell further reported that plaintiff in the last three months had fully engaged in treatment and made changes in her life based upon feedback. She had abstained from drugs and alcohol since beginning treatment. Chatwell reported nothing about plaintiff's functional limitations, psychiatric conditions or ability to work. The ALJ's findings do not conflict with what was reported by Chatwell.

The court concludes that any error in failing to expressly discuss the information provided by Marquez and Chatwell was harmless. *See Tommasetti*, 533 F.3d at 1038 (reversal not required where error inconsequential to non-disablility finding). The ALJ did not expressly mention Marquez by name but did consider the functional limitations identified by Marquez because they were

1 reported by others. Chatwell's letter provided no information that the ALJ needed to evaluate in
2 order to determine whether plaintiff was disabled. Neither Marquez's report nor Chatwell's letter
3 were inconsistent with the ALJ's finding that plaintiff was not disabled.

### E. The ALJ's Consideration of Evidence of Drug Use.

Plaintiff's final argument is that the ALJ improperly considered evidence of drug abuse during the five-step sequential evaluation. Plaintiff's argument is not clearly articulated, but as best the court can discern, plaintiff is arguing that the ALJ should not have considered any evidence of substance abuse until such time as she had found plaintiff to be disabled. Plaintiff points to a single statement by the ALJ, specifically that "[t]o the extent that the claimant has experienced intermittent periods of greater incapacity, those episodes result from intoxication due to substance abuse." TR 20. Plaintiff argues that this was improper.

The Commissioner, in turn, argues that plaintiff has "put the cart before the horse" and that since the ALJ did not find that plaintiff was disabled, there was no need to address whether the drug use was a material contributing factor to plaintiff's disability.

The Commissioner has the better argument. A claimant is ineligible for disability benefits if the claimant's drug addiction is a contributing factor material to the determination of disability. 42 U.S.C. §423(d)(2)(C). The ALJ reaches this materiality determination only after finding that the claimant is disabled and that there is medical evidence of drug addiction. 20 C.F.R. §416.935a. The "ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction." *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001). Only if the ALJ determines that the claimant is disabled should the ALJ decide whether the claimant would still be found disabled if she stopped using alcohol or drugs. *Id.* Here, however, the ALJ did not err because she did not find that plaintiff was disabled and thus could not have found that the disability was due to drug abuse which rendered her disqualified from receiving disability benefits.

Moreover, when viewed in context, the ALJ's statement is not an improper finding that drug abuse caused the alleged disability, thus disqualifying plaintiff from benefits, as suggested by plaintiff. The ALJ stated:

> To the extent that the claimant has experienced intermittent periods of greater

> incapacity, those episodes result from intoxication due to substance abuse. As the claimant's attorney is aware, were the claimant disabled by reason of an acute substance disorder, she would be ineligible for benefit payments under section 10 of the 1996 Contract with America Advancement Act (Public Law 104-121). The clinical evidence suggests that the claimant has abstained from substance abuse on a more consistent basis since 2003. This corresponds with the extended periods of greater functionality.

TR 20. The ALJ was not making an improper finding that plaintiff was disabled because of drug use. Instead, the ALJ noted that plaintiff has experienced "extended periods of greater functionality" since 2003, which the ALJ also noted corresponded to the time period in which plaintiff has more consistently abstained from substance abuse. *Id.* It also corresponds to her period of alleged disability, commencing on October 30, 2003. Thus, even if the comment could be understood to reflect a finding that plaintiff may have been disabled prior to 2003 due to substance abuse, such a finding would not be relevant to whether plaintiff was disabled within the applicable period, i.e., after October 30, 2003.

Plaintiff has not established that the ALJ erred in this regard.

## V. ORDER

For the foregoing reasons, the Commissioner is entitled to summary judgment and the ALJ's decision is affirmed.

DATED:  1/21/10

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

James Hunt Miller     jim_miller0@yahoo.com

Angelina Valle     angelina@valle-law.com

**Counsel for Defendants:**

Shea Lita Bond     shea.bond@ssa.gov

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**    1/22/10                        TER
                                                        **Chambers of Judge Whyte**